CUMBERLAND FARMS, INC. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF WESTBROOK
(AC 21047)

Lavery, C. J., and Dranginis and Flynn, Js.

Argued October 28, 2002—officially released January 28, 2003

*Ralph W. Johnson III*, with whom, on the brief, were *John B. Farley, Duncan J. Forsyth* and *Erik J. Ness*, for the appellant (defendant).

*David M. Royston*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendant zoning board of appeals of the town of Westbrook (board) appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Cumberland Farms, Inc., from the decision of

the board to uphold the decision of the zoning enforcement officer denying the plaintiff's application to reopen a gasoline station. On appeal, the board argues that the court improperly substituted its judgment for that of the board. We agree with the board, and, accordingly, reverse the judgment of the trial court.

The following facts, as recited in the court's memorandum of decision, are relevant to the board's appeal. The Bongiorni family formerly owned the subject property located at 1223 Boston Post Road in Westbrook. In 1941, the Bongiornis opened a gasoline station on the property and from 1975 through 1981 leased the station to David S. Anderson. The property thereafter was conveyed to the estate of John Bongiorni and was leased to Thomas H. Matus doing business as Tom's Super Saver Gasoline station.

In December, 1988, it was discovered that underground gasoline storage tanks on the property had leaked and contaminated the subject property as well as abutting property located at 1211 Boston Post Road, which was owned by the plaintiff. Between January 4 and January 11, 1989, the department of environmental protection (department) ordered the removal of the gasoline storage tanks from the property. On January 14, 1989, the department commenced remediation of the property. As of November 15, 1993, the department had incurred expenses of $348,228.44 in remediating the property and on February 14, 1994, filed a lien against the property.

On March 2, 1989, the plaintiff brought an action against John Bongiorni, trustee of the Bongiorni estate, and Matus for the damages it had sustained as a result of the contamination of its abutting property and obtained an attachment of the property. The department intervened in that action to recover its costs from remediating the property. On May 13, 1994, the plaintiff,

the department, the Bongiorni estate and Matus filed a stipulation for judgment. Pursuant to the judgment, the Bongiorni estate transferred the property to the plaintiff, which released its claims against the Bongiorni estate, and Matus agreed to vacate the property. The department released its lien, and the plaintiff entered into a consent order with the department to continue the remediation of the property. The Bongiorni estate conveyed the property to the plaintiff on August 25, 1994.

While the litigation and remediation were taking place, the zoning commission of the town of Westbrook revised its regulations, effective June 21, 1991. Section 4.55.01 of the revised regulations prohibits the use of a fuel storage facility in the commercial town center district (district) within which the property lies.

In September, 1996, the plaintiff filed a site plan application, proposing to demolish the existing gasoline station on the property and to build a new gasoline station on a site consisting of that property merged with its abutting property. That application was denied on the ground that a gasoline station was a prohibited use in the district. On July 1, 1997, the plaintiff filed a zoning compliance and health permit application with the zoning enforcement officer to reopen the former gasoline station on the property. On July 23, 1997, the zoning enforcement officer denied the application, concluding that (1) the use was not permitted in the district, (2) the use was not a preexisting, nonconforming use and (3) the use was abandoned.

The plaintiff appealed to the board from the zoning enforcement officer's decision. Following a public hearing, the board upheld the decision of the zoning enforcement officer. The plaintiff then appealed to the trial court, which reversed the decision of the board and sustained the appeal on the ground that the evidence

in the record was insufficient to support the board's determinations.[1] We granted the board's petition for certification to appeal and now conclude that the court improperly sustained the plaintiff's appeal.

I

The board first argues that the court improperly substituted its judgment for that of the board, which had determined that a gasoline station was not a valid nonconforming use because it had been discontinued prior to the enactment of zoning regulations prohibiting such a use. The plaintiff counters that the court properly concluded that the evidence in the record did not support the board's determination that the gasoline station was not a valid nonconforming use of the property. We agree with the board.

The standard of review in zoning matters is well settled. "In reviewing the actions of a zoning board of appeals, we note that the board is endowed with liberal discretion and that its actions are subject to review by the courts only to determine whether they are unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." (Citation omitted; internal quotation marks omitted.) *Wing* v. *Zoning Board of Appeals*, 61 Conn. App. 639, 643, 767 A.2d 131, cert. denied, 256 Conn. 908, 772 A.2d 602 (2001).

"The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning author-

---

[1] The court held that the board's determinations that (1) the use of the gasoline station on the property had been abandoned and (2) the use of the property as a gasoline station was not a preexisting, nonconforming use were erroneous. The court held that the board's determination that the use of the property as a gasoline station was not permitted in the district was not erroneous. That holding has not been challenged on appeal.

ity as long as it reflects an honest judgment reasonably exercised. . . . The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site . . . or through their personal knowledge of the area involved." (Internal quotation marks omitted.) *Children's School, Inc.* v. *Zoning Board of Appeals*, 66 Conn. App. 615, 627, 785 A.2d 607, cert. denied, 259 Conn. 903, 789 A.2d 990 (2001). "The trial court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support [the board's] findings. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Stancuna* v. *Zoning Board of Appeals*, 66 Conn. App. 565, 568, 785 A.2d 601 (2001).

In denying the plaintiff's request to overturn the decision of the zoning enforcement officer, the board indicated that the reopening of the gasoline station was not permitted as a preexisting, nonconforming use. The court, however, reversed the board's decision as erroneous. In so holding, the court rejected the board's argument that the use of the property as a gasoline station ceased in 1989 and was not in existence at the time of the adoption of the new regulations in 1991.

General Statutes § 8-2 (a) provides in relevant part that zoning regulations "shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Such regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use. . . ." A nonconformity has been defined as "a use or structure [that is] prohibited by the zoning regulations but is permitted because of its existence at the time that the

regulations [were] adopted." *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 710, 535 A.2d 799 (1988). "For a use to be considered nonconforming . . . that use must possess two characteristics. First, it must be *lawful* and second, it must be *in existence* at the time that the zoning regulation making the use nonconforming was enacted." (Emphasis in original; internal quotation marks omitted.) *Cummings* v. *Tripp*, 204 Conn. 67, 91–92, 527 A.2d 230 (1987). "The party claiming the benefit of a nonconforming use bears the burden of proving that the nonconforming use is valid." *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 744, 626 A.2d 705 (1993).

It is undisputed that in the present case, the premises were used as a gasoline station from 1941 until the removal of the gasoline storage tanks in January, 1989. On June 21, 1991, the zoning regulations were revised to prohibit the use of a fuel storage facility in the district.[2] On that date, the property, which was owned by the estate of John Bongiorni, was not being used as a gasoline station.

At the public hearing before the board, the counsel for the plaintiff repeatedly was questioned regarding the intent of the owner of the property. Vice Chairman Stephen Doerrer even suggested that the board recess the hearing to enable it to hear testimony from John Bongiorni, the former trustee of the Bongiorni estate, on that issue.[3] Counsel for the plaintiff, however, did

[2] Section 4.55.01 of the revised Westbrook zoning regulations provides: "The following are prohibited uses in the CTC District.

"(a) Repair garage, auto dealership, truck terminal, fuel storage facility, car wash.

"(b) The following shall be prohibited uses in the CTC District unless connected to a municipal sewer treatment facility: Laundromat, dry cleaner, and beauty salon."

[3] The transcript reveals the following:

"Doerrer: That's my point. I'm trying to get the intent of Bongiorni. He had no intent either.

not request a continuance to present evidence regarding the intent of Bongiorni or attorney Maura K. Finan, the successor trustee of the Bongiorni estate. The plaintiff relied, rather, on the testimony and affidavits of its employees and attorneys on the issue of the owner's intent. Included in the record before the board, however, was a letter dated September 19, 1997, from Finan indicating that she had been appointed trustee of the Bongiorni estate on May 28, 1990, and that as trustee, she "did not have any intention of reviving the gasoline station business or installing new fuel storage tanks."[4] The plaintiff did not submit any evidence to the board challenging Finan's authority with regard to the letter,[5]

---

"Ronald Grabarek [plaintiff's vice president for real estate]: He did have intent. He didn't have incentive to do it.

"Doerrer: I'd like to ask him that question, see what his [intentions] were.

"[Plaintiff's Counsel]: This would be the only way to settle that litigation because it ended up—

"Doerrer: "Can we take a ten minute recess? Maybe we can get a hold of Mr. Bongiorni and have him come down to find out what his [intentions] were.

"[Board chairman] John L. Hall III: Steve, I think we need to let the applicant finish presenting his case.

"Doerrer: Okay."

[4] The letter, addressed to board chairman John L. Hall III, states: "On May 28, 1990, I was appointed trustee of the Estate of John F. Bongiorni which owned a parcel of land located at 1223 Boston Post Road, Westbrook, Connecticut. This parcel was used as a gasoline service station until approximately 1989 when the Connecticut Department of Environmental Protection began to remediate certain contamination caused by the release of petroleum from the underground fuel storage tanks on the property. The underground storage tank system was removed as part of the remediation effort. As trustee, I did not have any intention of reviving the gasoline station business or installing new fuel storage tanks.

"On August 24, 1994, I executed a trustee's deed conveying the property to Cumberland Farms, Inc. This deed is recorded at Volume 166, Page 82 of the Westbrook Land Records."

[5] On September 13, 2002, this court ordered the parties to file supplemental briefs addressing "what authority Maura K. Finan, trustee for the estate of John Bongiorni, had with regard to the subject property; see *LaFlamme* v. *Dallessio*, 261 Conn. 247, 259 [802 A.2d 63] (2002); *Claydon* v. *Finizie*, 7 Conn. App. 522 [508 A.2d 845] (1986); and to state what other evidence was before the board regarding whether the use was a preexisting, nonconform-

nor did it seek to strike the letter from the record. Rather, counsel for the plaintiff argued that through the letter, Finan was not evincing an intent to abandon a property right.[6]

We conclude, contrary to the trial court, that the evidence before the board supports its determination that the use of the property as a gasoline station was not a preexisting, nonconforming use. The substantial evidence in the record, primarily Finan's letter, supports the board's conclusion that the owner of the property at the time of the change in the regulations did not intend to revive the gasoline station business. We therefore conclude that the board properly exercised its discretion in upholding the decision of the zoning enforcement officer and concluding that the plaintiff had not satisfied its burden of establishing the validity of the proposed gasoline station use as a preexisting, nonconforming use. The court, therefore, improperly substituted its judgment for that of the board and

ing use and whether the use was abandoned." The parties have complied with that order.

[6] At the public hearing, the plaintiff's counsel argued: "[W]ith respect to the letter from Maura K. Finan. I just ask you to look at it in the context of what we have been saying. The critical question, I think, is the last sentence of the first paragraph. I think it's very carefully written. It says, 'As trustee, I did not have any intention of reviving the gasoline station business or installing new fuel storage tanks.' And I think, as we have indicated here previously when the question was asked, when did they go in and put tanks in there? Wouldn't there be that evidence of some continuation of the business. And what we indicated is, because of the litigation and because of the cost that the state had incurred and was incurring in their lien on the property, there would be no incentive for the trustee to put in tanks. There would be no incentive for them to put in tanks. I submit to you that to say to you that 'I, as trustee, did not intend to reinstall,' is not the same thing as saying, 'I, as trustee, intended to give up a property right relating to the property.' Because a trustee could not do that. A trustee has a fiduciary responsibility to maintain the value of that property. So, there is a big difference between what the trustee said and abandoning a property right."

improperly reversed the decision of the board on that ground.[7]

## II

The board next argues that the court improperly substituted its judgment for that of the board, which had determined that any claimed nonconforming use had been abandoned. The plaintiff argues in response that the evidence in the record did not support the board's determination that the gasoline station use on the property was abandoned. We agree with the board.[8]

"Abandonment is a question of fact which implies a voluntary and intentional renunciation. Nevertheless, the intent to abandon may be inferred as a fact from the circumstances. . . . The mere discontinuance of a use where there is no intent to abandon is not enough. . . . To establish abandonment, the intention on the part of the owner [must be] to relinquish *permanently* the nonconforming use. . . . Because the conclusion as to the intention of the landowner is an inference of fact, it is not reviewable unless it was one which the trier could not reasonably make." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Cummings* v. *Tripp*, supra, 204 Conn. 93.

In addition to holding that the use was not a preexisting, nonconforming use, the board alternatively held that the use was abandoned. The court held, however, that there was substantial evidence in the record that the use of the property as a gasoline station was sus-

[7] In light of that conclusion, it is unnecessary for us to consider the board's additional and related claim that the court impermissibly established a new standard for determining whether a permitted use has been discontinued prior to a change in zoning regulations.

[8] We address that issue because the trial court addressed it and it was brief by the parties. We are mindful, however, that the board's action must be sustained if even one of the stated reasons for the board's decision is sufficient to support that decision. See *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 208, 658 A.2d 559 (1995).

pended for reasons beyond the owners' control for a reasonable period of time. Accordingly, the court held that the board's finding that the use had been abandoned was illegal, arbitrary and an abuse of discretion. Although we do not disagree with the court's reasonable interpretation of the evidence, we nonetheless conclude that substantial evidence existed in the record from which the board reasonably could have found that the Bongiorni estate had abandoned the gasoline station use.

It is undisputed that the gasoline storage tanks were removed from the property in January, 1989. At the time that the tanks were removed, the property was owned by the Bongiorni estate. The estate sold the property to the plaintiff in August, 1994. At no time between the removal of the tanks in January, 1989, and the sale of the property in August, 1994, did the estate take any action to restore or to revive the property as a gasoline station. The board, however, was presented with the letter from Finan, referred to previously, in which she stated that "[a]s trustee [of the estate], I did not have any intention of reviving the gasoline station business or installing new fuel storage tanks." With regard to the letter, the court stated: "Given the pendency of the litigation and remediation, it was reasonable for Finan to state that she had no intention of reviving the gasoline station during her tenure as trustee of the Bongiorni estate. The fact that she had no intention to reopen the gasoline station during her position as trustee, however, does not warrant a finding that she intended to permanently relinquish the use of the property as a gasoline station. Considering the circumstances, it would not have been economically prudent for the Bongiorni estate to reopen the gasoline station during the period between . . . when the contamination was discovered and . . . when the property was conveyed to [the plaintiff]." Although that is a reason-

able interpretation of the evidence, the board reached a contrary conclusion based on the Finan letter, which was equally reasonable. The court, therefore, improperly substituted its judgment for that of the board with regard to the intent of the Bongiorni estate to abandon the use of the property as a gasoline station.[9]

The judgment is reversed and the case is remanded with direction to render judgment dismissing the plaintiff's appeal.[10]

In this opinion the other judges concurred.

---

[9] Although the court addressed whether the plaintiff had abandoned the gasoline station use, it is the intent of the prior owner, not the current owner, that is controlling on that issue. *Caserta* v. *Zoning Board of Appeals*, 41 Conn. App. 77, 674 A.2d 855 (1996); R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 52.5, p. 566 ("[w]here a prior owner discontinued the use, the question then is whether that owner, not the current owner, intended to resume the use"). We have concluded that the court improperly substituted its judgment for that of the board with regard to the intent of the Bongiorni estate to abandon the use of the property as a gasoline station. It is unnecessary for us to consider the intent of the plaintiff on that issue.

[10] Our conclusions in this case, that there was sufficient evidence before the board to support its determinations that the gasoline station use was not a preexisting, nonconforming use and, alternatively, that the use had been abandoned, are based solely on the evidence submitted before the board. We do not hold that the removal of gasoline storage tanks pursuant to an environmental remediation order constitutes evidence of the abandonment of a preexisting, nonconforming use.