# SMITH BROTHERS WOODLAND MANAGEMENT, LLC
## *v.* ZONING BOARD OF APPEALS OF THE TOWN OF BROOKFIELD
### (AC 28376)

DiPentima, Lavine and Lavery, Js.

Argued February 14—officially released June 24, 2008

*Thomas W. Beecher*, for the appellant (defendant).

*Brian A. Lema*, for the appellee (plaintiff).

*Opinion*

LAVERY, J. The defendant, the zoning board of appeals of the town of Brookfield (board), appeals from the judgment of the trial court sustaining in part the appeal of the plaintiff, Smith Brothers Woodland Management, LLC, from a decision of the board upholding a cease and desist order issued by the Brookfield zoning enforcement officer. The board contends that the court improperly held that (1) the certificate of zoning compliance did not confer a benefit on the plaintiff and therefore it was not bound by the certificate's terms that were never appealed, and (2) existing Connecticut case law is distinguishable. We reverse the judgment of the trial court.

The following facts are relevant to the board's appeal. Prior to the plaintiff's purchase of the subject property on April 1, 1999, the premises were owned by John J. Kolinchak, Jr., from 1971 to 1999 and were sold to him by his parents, who had purchased the property on June 23, 1934. On March 23, 1999, Kolinchak submitted an application for a certificate of zoning compliance to the Brookfield zoning commission (commission) for use of the property as a general contractor site with nonretail logging as an accessory use. When the premises were purchased by the plaintiff, the application was taken over by the company. The application was denied on March 26, 1999, but the plaintiff requested that the

denial be reconsidered because it could confirm the nonconforming use of the site as a contractor site.

Letters were presented to confirm that heavy equipment had been stored on site, consistent with a contractor's site, but there also was testimony that logs had not been seen stored there. The plaintiff indicated that the primary purpose of the property was to store equipment, but the commission stated that it sounded like the plaintiff wanted to run a logging business from the property and that there was an attempt to enlarge the existing nonconforming use. The commission requested additional information about the proposed logging use, specifically looking for definitions of construction material, how to eliminate seeing a pile of logs from the street, what size the logs would be and a list of how many trucks would be on the property per week.[1] In a letter dated April 15, 1999, the plaintiff defined the parameters of his logging business, as well as proposed improvements, and stipulated activities that would not occur on the property, including the grinding of materials, the presence of stumps and wood chips and that logs less than twelve feet in length would be present only in a designated area for up to five days.

Specifically, the plaintiff wrote that "[t]he [l]ogging operation of [the plaintiff] is an [a]ccessory use to its [g]eneral [c]ontractor [o]peration. It is not a [r]etail [b]usiness. There have been no complaints associated with the current operations. This property will be dramatically improved with the added [s]creening, [p]ainting, elimination of all [vehicles] [t]ruck [b]odies, [buses] [p]arts, etc. [a]s mandated in the condition of sale. The property and activity will be more conforming than at present. There will be [n]o [e]xpansion of a [n]on-[c]onforming use, since the proposed use will have

---

[1] The record of the commission meetings in 1999 exists in the form of minutes from the meetings on April 8 and 22, 1999.

less [e]quipment, no storage of [others'] [v]ehicles, no outside repairs, significantly less [e]mployees, no [buses], [t]ruck [b]odies, large and small [p]arts, [r]ecreation [v]ehicles, [s]and [g]ravel will be present. The property will be utilized less and therefor[e] will not be an expansion of use." (Emphasis in original.) The application for the certificate of zoning compliance was granted by the commission with the stipulation that the provisions in the letter be part of the certificate, and a prohibition against the marshaling of logs, with marshaling defined as "the gathering, storing on site, [and] removal to another location." The plaintiff did not appeal from the imposition of the stipulations or take any further action regarding the certificate of zoning compliance.

The commission inspected the subject property in 2005 and found evidence of grinding material, storage of logs in excess of twelve feet in length, additional log storage outside of the approved area of the property and the presence of numerous unregistered vehicles that constituted an illegal junkyard.[2] On April 1, 2005, the commission sent a letter to inform the plaintiff of the results of the inspection and to inform the plaintiff that its representatives were to attend the next commission meeting to show cause as to why they should not be issued a citation for the noncompliance. At the commission meeting on April 14, 2005, the plaintiff appeared and agreed to move the logs in the unapproved area, to remove the unregistered vehicles and to remove the pile of wood chips. At the April 28, 2005 meeting, the zoning enforcement officer reported that no

---

[2] Section 242-202 of the Brookfield zoning regulations defines a junkyard in relevant part as "any place of outside storage or deposit, whether in connection with a business or not, for two (2) or more motor vehicles which are no longer intended or in condition for legal use on the public highways and shall also include any place of outside storage or deposit of used parts of motor vehicles which on any lot have an aggregate bulk equal to one (1) automobile."

changes had been made to the subject property, and the commission voted to issue a cease and desist order dated May 2, 2005, for the improper storing of logs and the on-site storage and maintenance of unregistered motor vehicles. The plaintiff appealed from the decision of the commission to the board.

At the July 11, 2005 meeting of the board, counsel for the plaintiff argued that the current use of the property was an intensification of a lawful, nonconforming use and that there was never an intention to relinquish that use. He argued that the application for the certificate of zoning compliance had no force and effect on the use carried out on the property and that construction yards have unregistered motor vehicles on them all the time. He also argued that there had been no change of use of the property and that since 1934, the property had been used for the storage of logs, storage and maintenance of construction materials, and for the storage of unregistered vehicles. Kolinchak attested in an affidavit that the property was "continuously used as a commercial contractor's yard for vehicle and materials storage and for the operation of our construction business. . . . In conjunction with the operation of our construction and commercial businesses at the [p]roperty, my father and I regularly and continuously utilized the [p]roperty for [1] the storage of building materials such as concrete blocks and lumber; [2] the storage of raw materials such as asphalt, concrete, cut logs, wood chips, sand, gravel and stone . . . and [5] the processing of raw and other materials such as the crushing, grinding and screening of stone along with the splitting and cutting of wood and lumber products."

The commission presented the certificate of zoning compliance and the attached stipulations to the board and stated that the commission had determined that the plaintiff had a preexisting, nonconforming use as a

contractor's yard, that the certificate with the stipulations was supposed to have been filed in the land records and that the plaintiff previously had not appealed from these findings. The commission argued that the certificate of zoning compliance defines the scope of the nonconforming use. In deciding to uphold the cease and desist order, the board determined that the certificate of zoning compliance was the "guiding document" and that, although the plaintiff had proven that its activities were preexisting, nonconforming uses, in context with the certificate of zoning compliance, there was an abandonment of all the activities other than a contractor's yard. As further evidence, the board pointed out the plaintiff's compliance with other cease and desist orders that had been issued after 1999.

The plaintiff appealed from this decision to the Superior Court, where a trial was held on April 3, 2006. The plaintiff argued that there had been no expansion of nonconforming uses on the property and that there was never an abandonment of the nonconforming use. The board argued that there was an intent to abandon when the plaintiff proposed the stipulated conditions and applied for the certificate of zoning compliance. It further argued that the plaintiff could not claim that the conditions in the certificate of zoning compliance are unenforceable because the plaintiff could have appealed and challenged the conditions within the statutory time limit. In a memorandum of decision dated July 3, 2006, the court found that the board's argument that the certificate of zoning compliance with its attached stipulations demonstrated the plaintiff's intent to abandon was "contrary to the evidence and established precedent." The court determined that the language in the stipulations expressed a less intensive use of the site but not abandonment. In relation to the unregistered vehicles on the property, the court held that the plaintiff had not established that this was a

valid preexisting, nonconforming use of the property and found that the board's upholding of the cease and desist order as to the motor vehicles was supported by substantial evidence in the record.

Specifically, the court distinguished *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 616 A.2d 793 (1992), and *Spectrum of Connecticut, Inc.* v. *Planning & Zoning Commission*, 13 Conn. App. 159, 535 A.2d 382, cert. denied, 207 Conn. 804, 540 A.2d 373 (1988). The court held that the cases were distinguishable because in both cases, the plaintiffs had enjoyed a benefit from the permits that had been granted, which also had been subject to conditions. The court drew a distinction because the certificate of zoning compliance in this case never had been recorded in the land records, and the court held that the plaintiff never had enjoyed the benefit of the permit.

The board filed a motion to reargue on the basis of the court's interpretation of a Brookfield zoning regulation that did not pertain to certificates of zoning compliance. The court agreed that the regulation was not relevant to the case at bar but held that it did not alter its analysis of *Upjohn Co.* and *Spectrum of Connecticut, Inc.*, nor its conclusion. The court affirmed its conclusion that the plaintiff had not utilized the certificate of zoning compliance because it legally could continue all valid, nonconforming uses. The court held that the certificate of zoning compliance was not binding on the plaintiff. Further, the court held that the plaintiff had not abandoned or unlawfully expanded its preexisting, nonconforming uses in regard to its logging operation. The court dismissed the plaintiff's appeal, in part, because the cease and desist order related to the storage of unregistered motor vehicles was supported by substantial evidence, and the court found that the plaintiff had abandoned grinding or retail sales of logs as a nonconforming use.

We begin by setting forth the relevant standard of review. "In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [board]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 559–60, 916 A.2d 5 (2007), citing *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 270 Conn. 447, 453, 853 A.2d 511 (2004). "Since the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency . . . the court must determine the correctness of the conclusions from the record on which they are based." (Citation omitted; internal quotation marks omitted.) *Spectrum of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 13 Conn. App. 163, quoting *Feinson* v. *Conservation Commission*, 180 Conn. 421, 425, 429 A.2d 910 (1980); *Housatonic Terminal Corp.* v. *Planning & Zoning Board*, 168 Conn. 304, 306, 362 A.2d 1375 (1975).

When a zoning authority has stated the reasons for its action, a reviewing court may determine only if the

reasons given are supported by the record and are pertinent to the decision. *Goldberg* v. *Zoning Commission,* 173 Conn. 23, 25–26, 376 A.2d 385 (1977). The decision of a zoning authority will be disturbed only if it is shown that it was arbitrary, illegal or an abuse of discretion. *Beit Havurah* v. *Zoning Board of Appeals,* 177 Conn. 440, 444, 418 A.2d 82 (1979).

"Abandonment is a question of fact which implies a voluntary and intentional renunciation. Nevertheless, the intent to abandon may be inferred as a fact from the circumstances. . . . The mere discontinuance of a use where there is no intent to abandon is not enough. . . . To establish abandonment, the intention on the part of the owner [must be] to relinquish *permanently* the nonconforming use. . . . Because the conclusion as to the intention of the landowner is an inference of fact, it is not reviewable unless it was one which the trier could not reasonably make." (Emphasis in original; internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Zoning Board of Appeals,* 74 Conn. App. 622, 631, 814 A.2d 396, cert. denied, 263 Conn. 901, 819 A.2d 836 (2003).

Our Supreme Court has "ordinarily recognized that the failure of a party to appeal from the action of a zoning authority renders that action final so that the correctness of that action is no longer subject to review by a court. . . . All of these rules rest in large part, at least in the zoning context, on the need for stability in land use planning and the need for justified reliance by all interested parties . . . ." (Citations omitted.) *Upjohn Co.* v. *Zoning Board of Appeals,* supra, 224 Conn. 102.

In *Upjohn Co.,* the plaintiff applied to the town zoning board for permits and site plan approval to enclose certain structures in connection to the wastewater

treatment system on its property. Id., 98. The applications were approved by the board, subject to twenty conditions, one of which was the elimination over time of an activity that was a valid nonconforming use, referred to as condition seven. Id. The plaintiff did not appeal from the imposition of the condition. Id. When the town zoning enforcement officer issued a cease and desist order that insisted that condition seven be enforced, the plaintiff then challenged the conditions. Id., 99. Our Supreme Court held that the plaintiff could not challenge the conditions of the application after the plaintiff failed to appeal in a timely manner.[3] Id., 105. In a subsequent opinion, the Supreme Court wrote that in deciding *Upjohn Co.*, "[f]irst, we reasoned that the rules requiring a contemporaneous appeal from the imposition of a zoning condition, and thus depriving a trial court of subject matter jurisdiction over a subsequent challenge, rest 'on the need for stability in land use planning and the need for justified reliance by all interested parties—the interested property owner, any interested neighbors and the town—on the decisions of the zoning authorities.' [Id., 102.] Second, we noted that 'there are limits to the notion that subject matter jurisdictional defects may be raised at any time'; id., 103; and that those limits applied to that case because '[t]he lack of jurisdiction, if any, was far from obvious, [the plaintiff] had the opportunity to challenge it at the time, and we perceive[d] no strong policy reasons to give [the plaintiff] a second opportunity to do so now.'

[3] In *Upjohn Co.*, the Supreme Court opined that there may be "exceptional cases" in which a previously unchallenged condition "was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy." *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 104–105. Such "exceptional cases" have been found. See *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 150–51, 763 A.2d 1011 (2001); *Gay* v. *Zoning Board of Appeals*, 59 Conn. App. 380, 388, 757 A.2d 61 (2000). The plaintiff has not claimed that this case is exceptional.

Id., 104." *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 149–50, 763 A.2d 1011 (2001).

*Spectrum of Connecticut, Inc.*, supra, 13 Conn. App. 159, was about a special permit for a video arcade, to which a special condition was imposed. The special condition was attached to the initial permit, and, in considering the renewal of the permit, the commission considered the noncompliance with the condition. Id., 162. The plaintiff "did not contest the imposition of the conditions before the commission with respect to the renewal of the permit. Just as a party may not ordinarily ask for a certain result and then challenge its validity on appeal . . . a party may not challenge on appeal the validity of a preexisting condition to a special permit which it seeks to renew." (Citations omitted.) Id.

The conclusion of the court that *Upjohn Co.* and *Spectrum of Connecticut, Inc.*, are distinguishable because, in the present case, there was no perceived benefit in obtaining the certificate of zoning compliance is not in conformity with the established case law. When the certificate of zoning compliance was applied for in 1999, there was a contract for the sale of the property. The plaintiff, in purchasing the property, had an interest in ensuring that the company's intended uses for the property were existing, nonconforming uses and had an interest in having documentation to prove the legal nonconformity. In the present case, as in *Upjohn Co.* and *Spectrum of Connecticut, Inc.*, once the stipulations in the application were imposed, the document became the operative document with respect to the permitted uses of the property. *Upjohn Co.* and *Spectrum of Connecticut, Inc.*, illustrate the point that when a person or entity applies for a permit or other zoning instrument, they then have two choices once the board accepts the application, even when there are conditions imposed; they can either accept the conditions and conform, or they can appeal from the imposition of the

conditions. Failure to conform to the conditions and appealing from their imposition only when the board enforces them is not an option save for "exceptional" circumstances. See *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 104–105.

By initiating the application to clarify the uses of the property, the plaintiff became bound by the outcome and could have appealed from the decision of the commission. Because the certificate of zoning compliance was not appealed from, we do not question its accuracy or the decision of the commission in granting it. In the present case, the commission made it clear that the stipulations, and not the preexisting, nonconforming uses, were to be adhered to when other cease and desist orders were issued on the subject property. Historically, the plaintiff complied with the stipulations and, if found by the board to not be in compliance, tailored its actions to conform. The board's determination that the application and stipulations showed an intent to abandon was one that it could reasonably make. The board had substantial evidence before it that the certificate of zoning compliance explicitly provided what was permitted and not permitted on the property and that some of the logging practices of the plaintiff were not permitted because such practices, even if they were preexisting, nonconforming uses, had been abandoned.

The judgment is reversed and the case is remanded with direction to dismiss the plaintiff's appeal in its entirety.

In this opinion the other judges concurred.