MOUNTAIN BROOK ASSOCIATION, INC., ET AL. *v.*
ZONING BOARD OF APPEALS OF THE TOWN
OF WALLINGFORD
(AC 31617)

DiPentima, C. J., and Beach and Bear, Js.

Argued September 22, 2011—officially released February 7, 2012

*Janis M. Small*, town attorney, for the appellant (defendant).

*Vincent T. McManus, Jr.*, for the appellees (plaintiffs).

DiPENTIMA, C. J. The defendant, the zoning board of appeals of the town of Wallingford, appeals from the judgment of the trial court sustaining the appeal of the plaintiffs, Mountain Brook Association, Inc. (Mountain Brook) and its individual members,[1] from the decision of the defendant upholding the cease and desist order of the town's zoning enforcement officer, Mark DeVoe. DeVoe had determined that the placement of children's recreational equipment, sheds and fences violated the relevant zoning regulations of the town of Wallingford. On appeal, the defendant claims that the court failed to interpret properly the relevant zoning regulations. Specifically, it argues that the placement of children's recreational equipment, sheds and fences in the Mountain Brook open space residential planned district violates these zoning regulations. We disagree with respect to the issue of children's recreational equipment but agree as to the sheds and fences.

The following facts and procedural history are relevant to this appeal. By certified letter dated July 24, 2006, DeVoe issued a cease and desist order, notifying Mountain Brook that various residents were in violation of the Wallingford zoning regulations because they had placed children's recreational equipment, sheds and fences on their property. These residents are all owners of single-family condominium units collectively known as Mountain Brook. The condominium units are located in an open space planned residential district (district), created pursuant to § 4.3 of the Wallingford zoning regulations (regulations). The permitted uses in the district

---

[1] The individual members of Mountain Brook that appealed the decision of the defendant to the trial court are Kenneth Mackenzie, Jessica Mackenzie, Douglass Barnett, Katherine Barnett, Anthony Verde, Caroline Pawlak, Yoo Sook Min, Peter Lowell, Francesca Lowell, Mark Allen, Dawn Allen, Michael Papacoda, Mary Caracciolo, Thomas Brien, Piper Brien, Donald Algrove, Michael Defeo, Holly Defeo, Zhang Shun, Le Zhao Shun, Heidi Long, Sharon McArthur, Robert Grant, III, Amy Grant, Jeffrey Wilson and Theresa Wilson.

are one-family, two-family and multifamily dwellings in principal buildings. See Wallingford Zoning Regs., § 4.3.B.1. The cease and desist order stated that letters previously had been sent to the individual residents regarding these violations. There had been no response to those letters, and DeVoe indicated that "recent field inspections indicate these items remain on the proper-ties [as] noted on the attached table." DeVoe also deter-mined that Mountain Brook was in violation of the regulations because it had authorized the placement of the children's recreational equipment, sheds and fences. DeVoe concluded that these items are not permitted for individual owners in the district but are permitted only as community facilities for the use and enjoyment of the entire development. Additionally, DeVoe indi-cated that approval from the town's planning and zoning commission was required for these items.

On September 18, 2006, the defendant heard the plain-tiffs' appeal from the cease and desist order.[2] During this proceeding, DeVoe spoke to the members of the defendant and acknowledged that he had not sent a "survey crew" to determine the precise location of the children's recreational equipment, sheds and fences. He also acknowledged that the majority of the items were not placed within the open space portion of the district.[3] He believed that these items required site plan approval from the planning and zoning commission and that such

[2] "In deciding an appeal to it concerning interpretation of the zoning regulations as applied to a particular piece of property, the zoning board of appeals acts in a quasi-judicial capacity. The zoning board of appeals has the authority to interpret the town's zoning ordinance and decide whether it applies to a given situation." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 33:7, pp. 260–61.

[3] During this proceeding, DeVoe stated that all land in the district is owned in common and that each unit owner has exclusive use of the area surrounding the unit. The plaintiffs' counsel, attorney Vincent T. McManus, described this area as a "limited common area." DeVoe then indicated that each unit owner owns in fee the area "out to the foundations" of his or her unit.

approval was lacking. Attorney Vincent T. McManus, Jr., spoke on behalf of the plaintiffs at this proceeding. The defendant, by a three to two vote, denied the plaintiffs' appeal.

The plaintiffs appealed the decision of the defendant to the trial court. On June 11, 2009, the court issued an order sustaining the plaintiffs' appeal.[4] The court concluded that "the record does not substantiate the [defendant's] vote to uphold the cease and desist order." After certification to appeal had been granted, the defendant filed a motion for articulation on November 18, 2009. On September 1, 2010, the defendant filed a motion to compel the trial court to act on its motion for articulation.[5] On September 15, 2010, this court granted the motion to compel and ordered the trial court to rule on the motion for articulation within twenty-one days. On October 6, 2010, the court issued an articulation.

As a preliminary matter, we identify certain aspects of the procedural posture of this case. Our starting point is the decision of the defendant following the cease and desist order. In *Caserta* v. *Zoning Board of Appeals*, 226 Conn. 80, 82, 626 A.2d 744 (1993), our Supreme Court concluded that "following an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the

---

[4] The complete text of the court's order was as follows: "This court has with delight reviewed the professional written memoranda and oral arguments presented by counsel in the zealous advocacy of their clients. The court has reviewed with care the record of the proceedings of the [defendant]. The court based upon the foregoing concludes that the record does not substantiate the [defendant's] vote to uphold the cease and desist order. Accordingly, the plaintiffs' appeal from the [defendant's] decision to uphold the decision is sustained."

[5] On September 7, 2010, the plaintiffs filed an objection to the defendant's motion to compel.

board and the record before the board." We also are mindful that the zoning board of appeals makes a de novo determination of the issue before it, without deference to the actions of the zoning enforcement officer. Id., 90; see also R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 33:7, p. 262.

"When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision. . . . Rather, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The principle that a court should confine its review to the reasons given by a zoning agency . . . applies [only] where the agency has rendered a formal, official, collective statement of reasons for its action. . . . It does not apply to mere utterances of individual members of the agency." (Citations omitted; internal quotation marks omitted.) *Harris* v. *Zoning Commission*, 259 Conn. 402, 420, 788 A.2d 1239 (2002). In the present case, the defendant did not issue a formal, collective statement of its reasons for upholding the cease and desist order. Both the trial court and this court, therefore, must search the entire record to find a basis for the board's decision. Id., 423; see also *Moon* v. *Zoning Board of Appeals*, 291 Conn. 16, 25–26, 966 A.2d 722 (2009).

We have reviewed the transcript of the discussion of the members of the defendant concerning the plaintiffs' appeal. Two of the members of the defendant, Brian Leslie and Vincent Cervoni, indicated that only the regulations in effect at the time that the special permit for the Mountain Brook development was granted should apply and, therefore, § 4.3.D.5.E of the regulations,

which was effective as of October 18, 2003, should not be considered. That section provides: "Open space may only be used for purposes approved by the Planning and Zoning Commission during the approval process. In [open space planned residential districts] those uses, in most cases, shall be limited to lawn and garden areas shown on the original site plan and areas to be left in their natural state adjoining the developed areas. Any use of open space not approved by the Commission shall be a violation of these regulations."[6] Wallingford Zoning Regs., § 4.3.D.5.E. Chairman Jeffrey Knickerbocker was concerned that sheds were built in violation of the building permit regulations. William Birney stated that he believed that the phrase "recreation facilities" did not include "playscapes or structures such as that." The members of the defendant then voted, with Leslie and Cervoni in favor of sustaining the appeal and the other three members opposed.

We now turn to the trial court's decision and subsequent articulation. We note that "[t]he burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." (Internal quotation marks omitted.) *Sciortino* v. *Zoning Board of Appeals*, 87 Conn. App. 143, 147, 866 A.2d 645 (2005); see also *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 669, 894 A.2d 285 (2006); *Vivian* v. *Zoning Board of Appeals*, 77 Conn. App. 340, 354, 823 A.2d 374 (2003). The court stated that it "believed that [DeVoe] relied upon [§ 4.3.D.5.E of the regulations] in issuing his order." It also noted that the record is devoid of facts that established whether the three categories of violations set forth in the cease and desist order are

---

[6] Andrew Barnett, a member of the defendant, questioned whether § 4.3.D.5.E of the regulations was relevant to the discussion because it addressed open space areas, and not the limited common area of each unit. Barnett further stated that, in his view, § 4.3.D.5 describes what "can and can't be done in open space."

located in "the open space, the limited common area, [the] common area of the development, or that part of the premises which was conveyed in fee." The court also recited the plaintiffs' argument that "some of the playscapes, gardens, sheds and fences existed before the relevant zoning regulations restricting uses were enacted and therefore should be protected as preexisting nonconforming uses." Although the court recited the law regarding preexisting nonconforming uses, it never applied the doctrine to the present case and accordingly did not determine whether the children's recreational equipment, sheds and fences existed prior to certain changes to the regulations.

On appeal, the defendant argues that the placement of children's recreational equipment, sheds and fences in Mountain Brook violates the regulations. The plaintiffs counter that the court properly concluded that the defendant's decision was not supported by substantial evidence. To resolve this appeal, we must interpret the relevant regulations and determine whether the plaintiffs are correct that the defendant's decision was not supported by substantial evidence. Our task is particularly challenging in light of the sparse record.

We identify our standard of review. As previously stated, one of the issues before this court is whether the placement of children's recreational equipment, sheds[7] and fences is permitted in a district pursuant to the regulations.[8] We, therefore, are presented with the opportunity to interpret the relevant regulations.

---

[7] In its articulation, the court stated: "Neither the regulations in force in 1999 nor any of the subsequently adopted changes mentions playsets, sheds and other recreational facilities." This statement, although true, is neither dispositive of the case nor does it end our analysis.

[8] We need not, therefore, address the plaintiffs' alternative grounds for affirming the judgment. Additionally, to the extent that the plaintiffs and the court concluded that the placement of certain children's recreational equipment, sheds and fences constituted preexisting nonconforming uses, we note that there is no evidence in the record to support such a determination.

Our Supreme Court has stated that "[u]nder our well established standard of review, [w]e have recognized that [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that . . . deference . . . to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 714–15, 960 A.2d 1018 (2008); *Borrelli* v. *Zoning Board of Appeals*, 106 Conn. App. 266, 270, 941 A.2d 966 (2008); *Munroe* v. *Zoning Board of Appeals*, 75 Conn. App. 796, 803, 818 A.2d 72 (2003) ([i]t is our job, as an appellate court, to construe the relevant zoning regulation because . . . the outcome . . . eventually will depend on a legal interpretation of the regulation by an appellate court)." (Internal quotation marks omitted.) *Goulet* v. *Zoning Board of Appeals*, 117 Conn. App. 333, 337, 978 A.2d 1160, cert. denied, 294 Conn. 909, 982 A.2d 1082 (2009).

"Because the interpretation of the regulations presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . . . The process of statutory interpretation involves the determination of the meaning of the statutory language [or . . . the relevant zoning regulation] as applied to the facts of

the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Trumbull Falls, LLC* v. *Planning & Zoning Commission*, 97 Conn. App. 17, 21–22, 902 A.2d 706, cert. denied, 280 Conn. 923, 908 A.2d 545 (2006); see also *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 416, 920 A.2d 1000 (2007); 9A R. Fuller, supra, § 33:7, p. 261.

"[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Furthermore, General Statutes § 1-1 (a) provides: In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly. If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Citation omitted; internal quotation marks omitted.) *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 21.

"A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words employed are to be

interpreted in their natural and usual meaning. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant. . . . The regulations must be construed as a whole and in such a way as to reconcile all their provisions as far as possible. . . . [R]egulations are to be construed as a whole since particular words or sections of the regulations, considered separately, may be lacking in precision of meaning to afford a standard sufficient to sustain them." (Internal quotation marks omitted.) *Fedus* v. *Zoning & Planning Commission*, 112 Conn. App. 844, 849–50, 964 A.2d 549, cert. denied, 292 Conn. 904, 905, 973 A.2d 103, 104 (2009); see 9A R. Fuller, supra, § 34:6, pp. 299–303.

We first consider the issue of whether the placement of children's recreational equipment for individual unit owners violates the zoning regulations.[9] Intertwined with this issue is the question of whether the plaintiffs have persuaded us that insufficient evidence existed before the defendant to support its decision in favor of upholding DeVoe's cease and desist order. The defendant acknowledges that § 4.3.B.2.c of the regulations permits certain recreational facilities within the district but contends that an application of all of the relevant regulations limits such equipment to those that are centrally located for the use of all unit owners within the Mountain Brook development. On the basis of the facts and record in this case, we disagree with the defendant's interpretation of the regulations and conclude that its decision as to children's recreational equipment lacks substantial evidence in the record.

---

[9] According to the chart attached to the cease and desist order, the following unit owners have children's recreational equipment: Douglas Barnett and Katherine Barnett, Anthony Verde, Caroline Pawlak, Yoo Sook Min, Peter Lowell and Francesca Lowell, David Wong and Gillian Wong, Thomas Brien and Piper Brien, Maria Buono and William Buono, Donald Algrove, and Zhang Shun and Le Zhao Shun.

We now set forth the relevant language from the zoning regulations. Section 4.3.B.2.c of the Wallingford zoning regulations specifically permits, as a related accessory use to one-family, two-family and multifamily dwellings in the district "[r]ecreation facilities limited to the use of individuals living on the premises." Section 4.3.D.11 of the Wallingford zoning regulations states: "Swimming pools, tennis courts, and other recreational facilities shall be as centrally located as possible, protected with a suitable and safe fence, located at least 25 feet from any dwelling unit and shall not be located within any of the required setbacks." Finally, § 4.3.A.1 states that one of the purposes of the district is to create a "coordinated entity." Wallingford Zoning Regs., § 4.3.A.1.

The defendant argues that it would make "absolutely no sense to interpret § 4.3.B.2.c to mean that such uses are permitted in each and every unit of a planned development" because this interpretation would thwart the stated purpose of a coordinated entity. Further, the defendant contends that in this type of district, accessory uses such as recreation facilities are required to be centrally located. It would appear, therefore, that the defendant's view is that *any and all* recreation facilities, whether in the open space or the limited common area, must be centrally located and not permitted at each and every unit. The fatal flaw with this argument, however, is that such an interpretation leads to a bizarre and unworkable result.

Because the term "facility" is not defined in the regulations, we turn to the dictionary. See *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 21. The American Heritage Dictionary (2d College Ed. 1985) defines "facility" as "[s]omething that facilitates an action or process . . . [s]omething created to serve a particular function." The list of what falls within the definition of recreation facilities appears to be virtually limitless.

For example, a lawn sprinkler used by children to cool off on a hot day, a lawn chair, an infant car carrier with a mobile dangling from it, a book, a travel swing, and a portable children's basketball hoop all facilitate recreation and therefore fall within the interpretation proposed by the defendant. Clearly, this could not have been the intention of the drafters of this regulation. A local zoning regulation must be interpreted to intend a reasonable and rational result. *Day* v. *Middletown*, 59 Conn. App. 816, 822, 757 A.2d 1267, cert. denied, 254 Conn. 945, 762 A.2d 900 (2000). Additionally, "[z]oning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms. . . . The words used in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms." (Citation omitted; internal quotation marks omitted.) *Coppola* v. *Zoning Board of Appeals*, 23 Conn. App. 636, 640–41, 583 A.2d 650 (1990); see also *Newman* v. *Planning & Zoning Commission*, 293 Conn. 209, 214, 976 A.2d 698 (2009). Finally, applying the rule of ejusdem generis, children's recreational facilities such as playsets, a far less intensive disruption of the landscape, may well not be in the same category as swimming pools and tennis courts. We conclude, contrary to the defendant's argument, that the drafters of §§ 4.3.B.2 and 4.3.D.11 of the regulations could not have intended to include *all* recreation facilities.

Further, the record in the present case provides no details regarding the children's recreational equipment. The letter from DeVoe refers to them as "playsets." It is not clear how many, if any, of the children's recreational equipment are located in the open space. Therefore, there is no evidence that the goal of preserving open space, as set forth in §§ 4.3.A.2 and 4.3.D.5.A of the

regulations, is advanced. Given the barren state of the record in this case, we cannot conclude that there was substantial evidence in the record to support the defendant's determination that the children's recreational equipment in this case fell with the definition of "recreation facilities" as set forth in the regulations.

"In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached." (Internal quotation marks omitted.) *Smith Bros. Woodland Management, LLC* v. *Zoning Board of Appeals*, 108 Conn. App. 621, 628, 949 A.2d 1239 (2008). Put another way, a reviewing court decides whether the defendant's findings reasonably were supported by the record. 9A R. Fuller, supra, § 33:7, p. 263. Under the facts and circumstances of this case, we conclude that the defendant's findings that the children's recreational equipment violated the regulations was not supported reasonably by the record, and, therefore, the court properly sustained the plaintiffs' appeal with respect to this issue.

We next turn to the question of whether the regulations permit the placement of a shed[10] by an individual

[10] During his argument before the defendant, McManus stated: "[W]e are talking about little plastic things that you snap together when you bring them home that is what we have pictures of them here. I mean they are not you know the kind they bring on trucks and they set them up on blocks and they are ten by twelve. . . . We are talking about stuff, little things like this that you would put one lawn mower in or something like that or you know, they are put together by the homeowner because you snap them together or something you don't need a permit, you don't build them in a sense and you certainly wouldn't need a building permit to have one." Additionally, unit owner Peter Lowell, speaking in favor of the appeal, told the defendant: "I have a little shed. . . . I just have my lawn mower back

unit owner in the district. The defendant first argues
that § 4.3.B of the Wallingford zoning regulations sets
forth the only uses permitted in such a district, and
because the regulation does not include the term
"shed," they are not allowed.[11]

As we previously indicated, § 4.3.B of the regulations
limits the permitted uses in a district to one-family, two-
family and multifamily dwellings in principal buildings.
The only permitted accessory buildings, structures and
uses are: "[a] Private garages . . . [b] Maintenance and
utility shops for the upkeep and repair of buildings,
structures and equipment on the site . . . [c] Recre-
ational facilities limited to the use of individuals living
on the premises . . . [d] Manager's office . . . [and]
[e] Utility building and structures." Wallingford Zoning
Regs., § 4.3.B.2.[12]

We are not persuaded by the defendant's argument
that the lack of the term "shed" in § 4.3.B of the regula-
tions requires a conclusion that sheds are not a permit-
ted use or building. We turn to the common meaning
of the term. Shed is defined as "[a] small structure,
either freestanding or attached to a larger structure,
serving for storage or shelter." American Heritage Dic-
tionary (2d College Ed. 1985). The structures classified
as "sheds" by DeVoe could be permitted under the
regulations as a "utility building" or as "maintenance

there [and] a couple of lawn chairs." We note that no photographs of the
sheds appear in the record before this court.

[11] According to the chart attached to the cease and desist order, the
following unit owners have sheds: Kenneth Mackenzie and Jessica Macken-
zie, Peter Lowell and Francesca Lowell, Mark Allen and Dawn Allen, Michael
Papacoda and Mary Caraciolo, Heidi Long, Sharon McArther, Jesse Conte
and Erica Conte, Robert Grant and Amy Grant, and Jeffrey Wilson and
Theresa Wilson.

[12] We agree with the defendant that these regulations are permissive,
meaning that those matters not specifically permitted are prohibited. See
*Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 653.

and utility shops." See Wallingford Zoning Regs., § 4.3.B.2.[13]

The defendant argues in the alternative that a special permit is required before a shed may be placed in a district. Section 7.5.A.1 of the Wallingford zoning regulations provides: "A *Special Permit shall be required for all uses specifically listed* in these regulations." (Emphasis added.) Thus, assuming arguendo that a shed[14] falls within § 4.3.B.2 of the regulations, it follows that a special permit is required. There is no evidence that any of the plaintiffs obtained a special permit prior to installing a shed within the Mountain Brook development. We conclude, therefore, that these sheds are in violation of the regulations.

Finally, we address the issue of whether the placement of fences by individual unit owners within the district violates the regulations.[15] We note that fences are not listed as a permitted use or accessory use[16] in

[13] We note that the regulations do not define the term "utility building."

[14] Unlike the term "recreation facilities," we note that the term "shed" is subject to a more precise description; that is, a structure subject to regulation under the regulations.

[15] According to the chart attached to the cease and desist order, the following unit owners have a fence: Douglas Barnett and Katherine Barnett, Anthony Verde, Donald Algrove, Michael DeFeo and Holly DeFeo, Balji Gurumoorthy and Kala Narayanaswamy, Heidi Long, Robert Grant and Amy Grant, and Scott Cina and Ann Cina.

[16] "The word 'use' and the word 'used' refers to any purpose for which a lot or part thereof is arranged, intended, or designed to be used, occupied, maintained, made available, or offered for use, and to any purpose for which a building or structure or part thereof, is arranged, intended or designed to be used, occupied, maintained, made available, or offered for or erected, constructed, altered, enlarged, moved or rebuilt with the intention or designed of using the same." Wallingford Zoning Regs., § 2.1.

Section 2.2 of the Wallingford zoning regulations defines an "accessory use or building" as follows: "A use or building, or both, customarily incidental and subordinate to the principal use or building, in character with the surrounding zone, and located on the same lot as such principal use or building or on a contiguous lot under the same ownership."

§ 4.3.B of the regulations.[17] Additionally, the Wallingford zoning regulations require certain information to be submitted for site plan approval. Section 7.4.A.3.a of the Wallingford zoning regulations requires that the "[l]ocation, dimensions, area, height, and setbacks of all existing and proposed buildings, signs, fences, and walls" be included in the site plan application.[18] The defendant argues that when the Mountain Brook development was created, a site plan was required, and any fencing needed to be included and identified on the site plan application. The plaintiffs do not claim that the fencing at issue in the present case was set forth in the initial site plan for the Mountain Brook development. Additionally, under the regulations, even if the placement of fencing in the district constituted a permitted use, a special permit would be required, and there was no evidence in the record that any of the plaintiffs obtained a special permit.[19] For all these reasons, we conclude that the placement of the fences at issue in this case violates the regulations.

As a final matter, we address an issue mentioned before the trial court and discussed in its articulation. Effective October 18, 2003, the regulations were amended to include § 4.3.D.5.E, which provides: "Open space may only be used for purposes approved by the Planning and Zoning Commission during the approval process. In [open space planned residential districts] those uses, in most cases, shall be limited to lawn and garden areas shown on the original site plan and areas

---

[17] We note that only fences over eight feet high are deemed structures. See Wallingford Zoning Regs., § 2.2.

[18] Additionally, § 7.4.C of the regulations requires that an open space and landscaping plan illustrate the proposed and existing location, general layout, type and size of fencing on the property.

[19] The regulations were amended in October, 2003, and an application for a special permit now requires a special permit plan and the information required in § 7.4 of the regulations. See Wallingford Zoning Regs., § 7.5.C. In reaching our conclusions, we do not rely on § 7.5.C.

to be left in their natural state adjoining the developed areas. Any use of open space not approved by the Commission shall be a violation of these regulations." Wallingford Zoning Regs., § 4.3.D.5.E. The plaintiffs' counsel argued before the defendant that he believed § 4.3.D.5.E of the regulations to be the basis for DeVoe's cease and desist order. In his view, it was improper to apply a "retroactive regulation" to the owners of the Mountain Brook units because they had purchased their units before the effective date of § 4.3.D.5.E. DeVoe countered that because the majority of the children's recreational equipment, fences and sheds at issue were not in the open space of the district, § 4.3.D.5.E did not apply and therefore did not provide the basis for the cease and desist order.

It does not appear that either the defendant or the court conclusively determined whether the items at issue in this case were preexisting nonconforming uses. We acknowledge that the court's articulation set forth the law on this issue, but we emphasize that it was not a matter actually decided by the court. Additionally, the defendant made no factual findings as to whether the children's recreational equipment, sheds and fences were preexisting nonconforming uses. Most importantly, in setting forth the rationale and reasoning supporting our decision, we have not used any regulation that did not exist prior to the creation of the Mountain Brook development.[20]

The judgment is reversed in part and the case is remanded with direction to dismiss the plaintiffs' appeal with respect to the issues pertaining to the sheds and fences. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[20] Most of § 4.3 of the regulations was effective as of September 18, 1990.