CAROL F. HOLT *v.* ZONING BOARD OF APPEALS OF
THE TOWN OF STONINGTON ET AL.
(AC 29089)

Lavine, Beach and Mihalakos, Js.

---

14

Argued October 16, 2008—officially released April 28, 2009

*Eric Knapp*, for the appellant (plaintiff).

*Jeffrey T. Londregan*, for the appellee (named defendant).

*William H. Hescock*, pro se, the appellee (defendant).

*Opinion*

LAVINE, J. This is an appeal by the plaintiff, Carol F. Holt, from the judgment of the trial court dismissing her appeal from the decision of the defendant zoning board of appeals of the town of Stonington (board) that reversed a conclusion by the zoning enforcement officer. The court dismissed the appeal on the grounds that the board lacked subject matter jurisdiction

because (1) the appeal to the board from the zoning enforcement officer's letter was not timely filed and (2) the letter did not constitute an appealable decision. The plaintiff claims that the court improperly concluded that the letter did not constitute a decision for the purposes of General Statutes § 8-7 and article VIII, § 8.10.2 of Stonington zoning regulations (regulations). The defendant William H. Hescock[1] claims that the court improperly concluded that his appeal from the letter was not filed timely. We conclude that under the specific circumstances of the present case, the letter did not in fact constitute an appealable decision.[2] We also conclude, however, that having determined that the letter was not a decision appealable to the board, the trial court should have reversed the board's decision and ordered a dismissal of the defendant's appeal, rather than dismissing the plaintiff's appeal to the court.

The following factual findings by the court are relevant to our consideration of the plaintiff's appeal. On May 12, 2005, the plaintiff purchased from Carol Rooney a lot at the intersection of Boulder Avenue and Hampton Street in Stonington. The size of the lot was approximately 7000 square feet. At the time of the purchase, the plaintiff was aware of a February 4, 2005 letter to Rooney from Joseph M. Larkin, Stonington's zoning enforcement officer. The relevant portions of the letter stated:

"Dear Mrs. Rooney,

"On April 28, 2003 I sent you [a] letter regarding the zoning status of the above-mentioned undersized lot.

---

[1] Although the board also was a defendant at trial, in this opinion, we refer to Hescock as the defendant.

[2] We therefore do not reach the issue of whether the court properly concluded that the appeal was not timely filed. We note, however, that the defendant as an "appellee . . . aggrieved by the judgment . . . from which the appellant has appealed"; see Practice Book § 61-8; see also Practice Book § 60-4; should have raised his challenge to the trial court's judgment by way of cross appeal.

In June 2004 the Planning & Zoning Commission amended its [z]oning [r]egulations . . . regarding undersized lots ([article II, § 2.9, of the Stonington zoning regulations]) and you have requested that I review this lot to see how the regulation amendment impacts it. Towards that end I offer the following:

"1. The lot is located in a RM-20 (residential) [z]one that requires conforming lots to have a minimum of 20,000 square feet of area with 100 feet of frontage.

"2. The subject lot's area is approximately 7000 square feet . . . .

"3. The newly adopted [§ 2.9 of the regulations][3] allows undersized lots to comply . . . with the bulk requirements of the RH-10 zone rather than the RM-20 [z]one.

"4. Based on the RH-10 [z]one [b]ulk [r]equirements, a single-family residence could be built on this lot if it does not exceed a total floor area of approximately 1750 [square feet]."

In paragraphs six and seven, Larkin explained that the house built on the lot would have to comply with the flood hazard zone and possibly with the coastal area management sections of the regulations. On November 9, 2005, the plaintiff submitted to Larkin building plans for the lot. At or about the same time, she submitted to him requests for a building permit and a certificate of zoning compliance.

The defendant, whose property abuts the lot, learned of Larkin's letter to Rooney on or before November 15, 2005, and, on November 28, 2005, submitted a letter to Larkin through an attorney. In his letter, the defendant

---

[3] Section 2.9 of article two of the Stonington zoning regulations provides in relevant part: "Lots owned separately from adjoining tracts and existing prior to July 19, 1960, with area or frontage less than required by these [r]egulations may be used for a single-family residence by complying with the following . . . ."

informed Larkin of a conveyance from 1981 that, in the defendant's opinion, resulted in the lot's not qualifying for development as an undersized lot under § 2.9 of the regulations. The defendant asked Larkin to reconsider his February 4, 2005 letter before issuing a zoning compliance letter. In response, Larkin sought advice on this issue from a municipal attorney.

On December 15, 2005, the plaintiff's attorney asked Larkin not to take action on the plaintiff's requests for a building permit and a certificate of zoning compliance so that the plaintiff could respond to the defendant's November 28, 2005 letter. On December 29, 2005, the municipal attorney sent a letter to Larkin, supporting the defendant's position that the lot did not qualify for construction under § 2.9. In late January or early February, 2006, the plaintiff withdrew her requests for a building permit and a certificate of zoning compliance. On February 15, 2006, she published a copy of Larkin's February 4, 2005 letter in a local newspaper.

On March 1, 2006, the defendant appealed from Larkin's February 4, 2005 letter to the board. The board sustained the defendant's appeal, deciding that Larkin's conclusion in the letter that the lot qualified as an undersized lot under § 2.9 was incorrect. The plaintiff appealed from the board's decision to the trial court, and, on May 15, 2007, the court dismissed her appeal, concluding that (1) the board lacked subject matter jurisdiction to consider the defendant's appeal because he did not file it in a timely manner and (2) the board lacked subject matter jurisdiction to hear the appeal because the February 4, 2005 letter was not a decision pursuant to General Statutes § 8-7 and § 8.10.2 of the regulations.

The crux of the plaintiff's argument on appeal is that Larkin's letter was an appealable decision[4] because our

---

[4] Both General Statutes §§ 8-6 and 8-7 provide that a board may hear appeals from an "order, requirement or decision" of the official charged with the enforcement of zoning regulations. The plaintiff claims that the

courts have in the past reviewed decisions of zoning boards reversing or upholding letters issued by zoning enforcement officers. Although, in some instances, conclusions or opinions expressed in letters issued by zoning enforcement officers may be appealable decisions pursuant to General Statutes §§ 8-6 and 8-7 and have been treated as appealable decisions by our courts, we do not agree with the plaintiff that this case presents such an instance.

We first set forth our standard of review. The question of whether a letter written by a zoning enforcement officer is a decision under General Statutes § 8-7 and § 8.10.2 of the regulations is an issue of law, and our review is therefore plenary. See *Wiltzius* v. *Zoning Board of Appeals*, 106 Conn. App. 1, 23, 940 A.2d 892 (review of court's application of § 8-7 is plenary), cert. denied, 287 Conn. 906, 907, 950 A.2d 1283, 1284 (2008); see also *Munroe* v. *Zoning Board of Appeals*, 261 Conn. 263, 269, 802 A.2d 55 (review of issue concerning statutory interpretation of § 8-7 is plenary).

Section 8-7 governs appeals to zoning boards and provides that "[t]he concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or *decision* of the official charged with the enforcement of the zoning regulations . . . ." (Emphasis added.)[5] Section 8.10.2 of the regulations also provides that "[a]ny person claiming to be aggrieved by any order, requirement, or decision made by the [z]oning [e]nforcement [o]fficer may

letter was a decision and does not claim that it constituted an order or a requirement.

[5] General Statutes § 8-6 (a) similarly provides in relevant part: "The zoning board of appeals shall have the following powers and duties: (1) [t]o hear and decide appeals where it is alleged that there is an error in any *order, requirement or decision* made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ." (Emphasis added.)

appeal to the [z]oning [b]oard of [a]ppeals." The issue before us is, therefore, whether Larkin's February 4, 2005 letter was a "decision" under General Statutes § 8-7 and § 8.10.2 of the regulations.

We begin our analysis by noting that although our courts have treated actions of zoning enforcement officers as appealable decisions; see, e.g., *Munroe* v. *Zoning Board of Appeals*, supra, 261 Conn. 263; *Bishop* v. *Zoning Board of Appeals*, 92 Conn. App. 600, 886 A.2d 470 (2005), cert. denied, 277 Conn. 906, 894 A.2d 986 (2006); no Connecticut court, to our knowledge, has addressed the issue of whether all letters issued by zoning enforcement officers automatically are appealable to zoning boards of appeals. For example, this court recently concluded in *Wiltzius* v. *Zoning Board of Appeals*, supra, 106 Conn. App. 19, that the issuance of the certificate of zoning compliance by the zoning enforcement officer constituted an appealable decision pursuant to General Statutes § 8-6. In reaching this decision, this court relied in part on the fact that the certificate itself contained language stating that it was appealable pursuant to § 8-7. *Wiltzius* v. *Zoning Board of Appeals*, supra, 21.

Conversely, in *Pinchbeck* v. *Zoning Board of Appeals*, 58 Conn. App. 74, 76–79, 751 A.2d 849 (2000), this court held that no order, requirement or decision was made before the defendant zoning board's July 23, 1997 hearing on an application for a variance and therefore that a handwritten statement on a variance application dated approximately July 1, 1997, stating that the "[e]nforcement officer indicated that side yard [variance] for height increase [was] not required" was not an order, requirement or decision under §§ 8-6 and 8-7.[6]

---

[6] We therefore disagree with the plaintiff's argument that this court held in *Pinchbeck* that a letter issued by the zoning enforcement officer on July 23, 1997, advising the plaintiffs that there was no need for a side yard variance, was an appealable decision. *Pinchbeck* v. *Zoning Board of Appeals*, supra, 58 Conn. App. 76. The court in *Pinchbeck* concluded that "no evidence was offered to establish that the zoning enforcement officer has issued an order, requirement or decision with regard to the need for a side yard

We do not think that a bright line rule has been so far established in evaluating this category of cases. We conclude, therefore, that the determination of whether the action of a zoning enforcement officer amounts to a decision appealable under § 8-7 depends on the particular facts and circumstances of each case.

We next turn to article VIII of the regulations, which governs administration and enforcement of the Stonington zoning regulations. Our Supreme Court has stated that "[b]ecause the interpretation of [zoning] regulations presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes." (Internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 416, 920 A.2d 1000 (2007).

Article VIII, §§ 8.2, 8.3 and 8.4 of the Stonington zoning regulations address zoning permits, site plan submissions and approvals and site plan requirements, respectively. Section 8.2 provides that the regulations shall be administered by the planning and zoning commission or its appointed agent.[7] Section 8.2.1 provides that "[a] permit will be issued when all the applicable findings are made for compliance" and grants to a zoning agent the following powers when determining compliance: (1) to inspect buildings, places, premises or uses, (2) to conduct on-site inspections and (3) to seek or to require information needed to determine the facts

variance at or before the July 23, 1997 hearing." Id., 78. We decline the plaintiff's invitation to construe the *Pinchbeck* holding to imply that a separate letter by the zoning enforcement officer, also issued on July 23, 1997, was therefore an appealable decision.

[7] Zoning enforcement officers are agents of zoning commissions. *Caserta* v. *Zoning Board of Appeals*, 23 Conn. App. 232, 235, 580 A.2d 528 (1990), rev'd on other grounds, 219 Conn. 352, 593 A.2d 118 (1991).

of any issue under the regulations. Section 8.2.2 provides that "[b]efore undertaking any site improvement work changing the use or adding to the exterior of any structure . . . application shall be made to the appointed agent for . . . a zoning permit." Section 8.2.3 provides that all uses or changes of uses of buildings require a certificate of zoning compliance, which shows that such use is in conformity with the provisions under the regulations. Sections 8.2.2.1 through 8.2.2.6 list the items that must accompany all applications for zoning permits, including the application form, a site plan, other necessary documentation or information and copies of other state, local, or federal applications. Section 8.11 authorizes the planning and zoning commission or the officer to inspect and to examine any building, structure, place or premise, and to order in writing the remedying of any violation of the regulations. The regulations, therefore, do not contain any provision expressly authorizing the zoning enforcement officer, or any other agent of the zoning commission, to decide whether a lot qualifies for construction or to make final determinations on the applicability of the regulatory provisions by issuing letters to the lot's owner or previous owner.

Our review of the regulations leads us to conclude that the final determination that a single-family residence could be constructed on the plaintiff's lot is made by the issuance of appropriate permits, such as a building permit or a certificate of zoning compliance.[8] We conclude therefore that Larkin's letter that the plaintiff's

___

[8] We do not agree, therefore, with the defendant's argument that we have no actual controversy to decide because the determination of whether the lot qualified for construction was not within Larkin's powers. See *Helbig* v. *Zoning Commission*, 185 Conn. 294, 320, 440 A.2d 940 (1981). We conclude that Larkin was authorized to determine that a single-family residence could be constructed on the lot by granting the requested building permit and certificate of zoning compliance, events which did not occur in this case.

lot qualified for construction of a single-family residence was an advisory letter informing Rooney that a single-family residence could be built on it if the necessary permits were obtained.

We stress that we do not conclude that all letters issued by zoning enforcement officers interpreting zoning regulations, and applying them to specific situations, are not appealable pursuant to § 8-7. The plaintiff cites the statement by zoning commentator Robert A. Fuller that the "zoning enforcement officer has initial authority to interpret the zoning regulations, but the interpretation made is subject to review of the zoning board of appeals and on appeal by the Superior Court." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 12.5, p. 284. We do not disagree with the plaintiff's argument that zoning enforcement officers often interpret zoning regulations. Appeals are often taken from actions of zoning enforcement officers that involve interpretation of regulations, the issuance of cease and desist orders; see, e.g., *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 894 A.2d 285 (2006); *Lawrence* v. *Zoning Board of Appeals*, 158 Conn. 509, 264 A.2d 552 (1969); *Smith Bros. Woodland Management, LLC* v. *Zoning Board of Appeals*, 108 Conn. App. 621, 949 A.2d 1239, cert. granted on other grounds, 289 Conn. 908, 957 A.2d 872 (2008); or the granting or denying of building permits and certificates of zoning compliance. See, e.g., *Wnuk* v. *Zoning Board of Appeals*, 225 Conn. 691, 626 A.2d 698 (1993); *Bishop* v. *Zoning Board of Appeals*, supra, 92 Conn. App. 600; *Sciortino* v. *Zoning Board of Appeals*, 87 Conn. App. 143, 866 A.2d 645 (2005).

Unlike the situation in cases involving cease and desist orders or approvals and denials of applications, however, we are left to speculate what legal effect or consequence, if any, Larkin's letter has in the present case. The plaintiff does not argue that she can construct

a single-family residence on her lot solely on the basis of the letter. She also does not argue that the letter was the equivalent of a building permit or a certificate of zoning compliance. The plaintiff, most importantly, does not even argue that Larkin's February 4, 2005 letter had any binding effect on his power subsequently to approve or to deny her requests for a building permit or a certificate of zoning compliance in accordance with the zoning regulations. The plaintiff's requests for the permit and the certificate were pending before Larkin when she withdrew them, and she does not argue that Larkin was under any obligation to approve those requests in light of his earlier, perhaps erroneous, opinion that § 2.9 of the regulations applied to the plaintiff's lot. The plaintiff merely argues that all letters issued by zoning enforcement officers interpreting regulations automatically are appealable to zoning boards of appeals simply because our courts have entertained such appeals in the past. We are not persuaded. The issue of whether similar letters by zoning enforcement officers constitute appealable decisions under § 8-7 or § 8-6 has never been addressed directly by our appellate courts.

In evaluating whether Larkin's initial interpretation of the regulations was a decision in this case, we find instructive cases in which our Supreme Court interpreted the term "decision" as found in General Statutes §§ 8-8[9] and 8-28.[10] In *East Side Civic Assn.* v. *Planning & Zoning Commission*, 161 Conn. 558, 290 A.2d 348

---

[9] General Statutes § 8-8 (b) governs appeals from actions of zoning boards to courts and provides in relevant part that "any person aggrieved by any *decision* of a board . . . may take an appeal to the superior court . . . ." (Emphasis added.)

[10] General Statutes § 8-28 provides in relevant part: "Notice of all official actions or decisions of a planning commission . . . shall be published . . . . Any appeal from an action or decision of a planning commission shall be taken pursuant to the provisions of section 8-8."

(1971),[11] our Supreme Court held that the trial court acted properly in dismissing for lack of subject matter jurisdiction the plaintiff's appeal from an approval of a site plan by the local planning and zoning commission. The Supreme Court based its holding on the fact that "[t]he action of the planning section [of the Hamden planning and zoning commission] in approving the revised site plans was merely one step to be taken in the scheme of the regulations"; id., 561; and, therefore, the planning section's action, being preliminary and advisory, was nonbinding. Id., 561–62. The court in *East Side Civic Assn.* relied on the proposition from *Sheridan* v. *Planning Board*, 159 Conn. 1, 10, 266 A.2d 396 (1969), that no appeal lies from a planning board unless its action is "binding without further action by a zoning commission or other municipal agency." (Internal quotation marks omitted.) *East Side Civic Assn.* v. *Planning & Zoning Commission*, supra, 558. We are mindful of the fact that those cases focus on appeals from zoning boards to trial courts while the case before us concerns an appeal from a zoning enforcement officer's action to a zoning board. We nonetheless find the Supreme Court's language instructive and note that the plaintiff has not argued that Larkin's opinion in the letter was binding as to his subsequent approval or denial of necessary permits to build. The resolution of the issue of whether the plaintiff may construct a single-family residence on her property was subject to and contingent on further action by Larkin on her requests for a building permit and a certificate of zoning compliance.

[11] *East Side Civic Assn.* v. *Planning & Zoning Commission*, supra, 161 Conn. 558, is a case from 1971 that addresses, among other things, § 8-28. We note that § 8-28 was amended to address § 8-8. That amendment took effect on October 1, 1989, and it is unclear whether that amendment overrules the holding in *East Side Civic Assn.* See R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 36.3, p. 229.

It is significant that Larkin stated in the first paragraph of his February 4, 2005 letter that he was responding to a request that he "review this lot to see how the regulation amendment impacts it" rather than a request that he formally take action of any sort. In the fourth paragraph of the letter, he stated that "a single-family residence could be built on this lot" if it did not exceed a certain total floor area. His language was conditional. Our conclusion is further supported by the portions of the letter informing the plaintiff that her lot was subject to flood hazard zone regulations and possibly to coastal area management review, indicating that more information was needed before the actual permits could be issued.

We also find instructive our Supreme Court's holding in *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983),[12] which governs appeals to this court from interlocutory orders and rulings of the trial court. We are mindful of the fact that, although appellate proceedings arising out of administrative appeals are subject to the requirements of *Curcio*; see *Schieffelin & Co.* v. *Dept. of Liquor Control*, 202 Conn. 405, 409, 521 A.2d 566 (1987); our research indicates that its holding has not been extended to appeals from zoning enforcement officers' actions to zoning boards. We nonetheless find highly germane the fact that Larkin's action was not appealable under the second prong of *Curcio*, which states that "[a]n otherwise interlocutory order is appealable . . . (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 31. Our review of the parties' briefs and the record leads us to conclude that

---

[12] *State* v. *Curcio*, supra, 191 Conn. 31, provides that "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them."

Larkin's February 4, 2005 letter did not establish or conclude the plaintiff's right to construct a single-family residence on her property because, regardless of what Larkin stated in the letter, that right is subject to and will be affected by further proceedings of the municipality, namely, its decision either to approve or to deny the plaintiff's requests for a building permit and a certificate of zoning compliance.

A conclusion that Larkin's letter decided the issue of whether the plaintiff could build a residence on her lot would render the process of applying for a building permit or a certificate of zoning compliance superfluous. It would discourage interested parties from doing what the defendant did in the present case, namely, ask a zoning enforcement officer to reconsider a conclusion in his or her letter prior to issuing a certificate of zoning compliance. It might send a signal to interested parties that all actions by zoning enforcement officials automatically should be appealed to zoning boards, thereby unnecessarily burdening the boards with premature appeals. It would also deter zoning enforcement officers from offering helpful preliminary advice to members of the community.

The plaintiff, in arguing that Larkin's letter was an appealable decision, relies on cases in which our trial courts reviewed appeals from letters issued by zoning enforcement officers, although none of those cases directly addressed the issue of zoning boards' jurisdiction over the actions of zoning enforcement officers. In *Cross Street, LLC* v. *Zoning Board of Appeals*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-03-0198302-S (December 20, 2004) (38 Conn. L. Rptr. 391), the trial court dismissed an appeal from a zoning board's decision sustaining a decision by the local zoning enforcement officer. The zoning enforcement officer in that case had advised the plaintiff that the provisions of General Statutes § 8-26a (b) did not

apply to his application to locate a synagogue on certain property and that the synagogue would have to comply with applicable zoning regulations. Id. In *Macher* v. *Willington*, Superior Court, judicial district of Tolland, Docket No. CV-98-67453-S (June 22, 1999), the trial court reviewed a zoning board's dismissal of the plaintiffs' appeal from a zoning enforcement officer's letter advising them that they required a special permit to serve alcohol on their premises. Id.; see also *Ross* v. *Zoning Board of Appeals*, Superior Court, judicial district of Stamford-Norwalk, Docket Nos. CV-03-0198198-S and CV-04-4001747-S (March 20, 2006) (plaintiffs appealed from zoning enforcement officer's letter determining that their lots merged into one lot by " 'common law merger' "); *Rich* v. *Zoning Board of Appeals*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-04-0200065-S (October 20, 2005) (40 Conn. L. Rptr. 189) (plaintiffs appeal from decision of zoning enforcement officer to issue permit).

In addition to the fact that the trial courts in those cases did not directly address the issue of whether the conclusions of the zoning enforcement officers were appealable under § 8-7, the present case is factually distinguishable from those cases because Larkin never reached a final determination of an issue. He did not have an opportunity to act on the plaintiff's request for a building permit and a certificate of zoning compliance, and even told the plaintiff that he was reconsidering his letter and waiting for advice from the municipal attorney.

By contrast, in the cases cited by the plaintiff, a zoning enforcement officer's conclusion was a final determination of a particular issue, and his or her involvement in the matter was over. In *Macher*, for example, the zoning enforcement officer's determination that the plaintiffs required a special permit to serve alcohol effectively determined that they could not serve alcohol

without a special permit, and the plaintiffs' only recourse was an appeal to the zoning board. See *Macher* v. *Willington*, supra, Superior Court, Docket No. CV-98-67453-S. In *Rich*, the zoning enforcement officer clearly stated that he would issue a building permit and actually issued the permit, circumstances not present in the case before us. See *Rich* v. *Zoning Board of Appeals*, supra, 40 Conn. L. Rptr. 189. In *Ross*, the plaintiffs appealed to the zoning board from a zoning enforcement officer's final determination that they were not entitled to a separate use of their two lots. See *Ross* v. *Zoning Board of Appeals*, supra, Superior Court, Docket Nos. CV-03-0198198-S and CV-04-4001747-S. Our reading of *Ross* indicates that the zoning enforcement officer's determination did not require any additional steps from, and was not subject to any further consideration by, the zoning enforcement officer. See id.

We additionally note that although some trial courts have reviewed decisions of zoning boards upholding or dismissing appeals from zoning enforcement officers' actions similar to that in the present case, trial courts in other cases have treated conclusions reached by zoning enforcement officers as preliminary or advisory opinions. In *ASL Associates* v. *Proch*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 370080 (December 21, 1990) (3 Conn. L. Rptr. 28), the trial court decided that a letter from a zoning enforcement officer stating that submitted plans conformed to the special permit was an opinion of the zoning enforcement officer communicated to the building inspector rather than an appealable action. Similarly, in *Boris* v. *Garbo Lobster*, Superior Court, judicial district of New London, Docket No. 547637 (April 6, 1999), the trial court decided that a conclusion by the zoning enforcement officer that the application submitted by the defendant met the requirements for a special permit was simply a preliminary interpretation

of the zoning regulations and not an appealable decision. The court based its conclusion partly on the fact that the application was subject to secondary review by the planning and zoning commission, as evidenced by the fact that the zoning commission ultimately granted the subject permit on the basis of its evaluation. Id. Larkin's preliminary interpretation of the regulations in the present case was likewise subject to his secondary review triggered by the plaintiff's request for a building permit and certificate of zoning compliance.

We understand that zoning enforcement officers, like other town officials, frequently provide informal advice, counsel and expertise to local citizens. We understand as well that such assistance provides a valuable service as individuals make decisions relating to their property. The issue in this case, however, is a narrow one concerning whether Larkin's February 4, 2005 letter enunciated an appealable decision. We conclude that in light of the zoning regulations involved and the language used in the letter, and under the specific facts and circumstances of the present case, the court correctly concluded that the letter was a preliminary, advisory opinion and not a decision subject to appeal under General Statutes § 8-7 and § 8.10.2 of the regulations. In an administrative appeal, the court has jurisdiction to determine whether the administrative body had jurisdiction to issue its ruling. See *Stickney* v. *Sunlight Construction Co.*, 248 Conn. 754, 756, 730 A.2d 630 (1999) (where workers' compensation commissioner lacked jurisdiction to open and modify voluntary agreement, Appellate Court properly reversed improper ruling). The court properly concluded that the board lacked subject matter jurisdiction to consider an appeal from Larkin's letter. That determination, however, did not deprive the trial court of jurisdiction to consider the plaintiff's challenge to the board's decision, and the court was not required to dismiss the plaintiff's appeal.

Instead, the court should have reversed the decision that the board had issued without jurisdiction and directed a dismissal of the defendant's appeal to the board.[13]

The judgment is reversed and the case is remanded to the trial court with direction to render judgment directing the board to dismiss the defendant's appeal.

In this opinion the other judges concurred.

---

[13] The dispositions in certain Appellate Court opinions seem inconsistent with the Supreme Court's decision in *Stickney*. See *Monroe* v. *Zoning Board of Appeals*, 63 Conn. App. 748, 760–61, 778 A.2d 1007 (2001) (ordering dismissal of appeal to trial court from decision of zoning board of appeals issued without jurisdiction), rev'd on other grounds, 261 Conn. 263, 802 A.2d 55 (2002); *Bosley* v. *Zoning Board of Appeals*, 30 Conn. App. 797, 800, 622 A.2d 1020 (1993) (affirming dismissal of appeal to trial court from decision of zoning board of appeals issued without jurisdiction); but see *Koepke* v. *Zoning Board of Appeals*, 30 Conn. App. 395, 396, 620 A.2d 811 (1993) (affirming trial court judgment sustaining appeal from decision of zoning board of appeals issued without jurisdiction), rev'd on other grounds, 230 Conn. 452, 645 A.2d 983 (1994). It is clear from *Stickney* v. *Sunlight Construction Co.*, supra, 248 Conn. 756, that where an administrative body lacked jurisdiction to issue the ruling being appealed, the proper disposition on appeal is to reverse the improper ruling.