# ESTATE OF STEPHEN E. OWENS*
## v. CTRE, LLC
## (AC 31401)

Harper, Alvord and Peters, Js.

---

\* Our review of the pleadings discloses that prior to the Probate Court's appointment of an executor of the decedent's estate, this action initially was filed as Estate of Stephen E. Owens. Lewis R. Labbadia, executor of the estate of Stephen E. Owens, filed in the trial court a motion to be added as a party plaintiff shortly after he had been appointed. The court thereafter granted the motion and the parties and the court thereafter referred to Labbadia in his capacity as executor of the estate as the plaintiff. We do likewise for purposes of this opinion. See, e.g., *Isaac* v. *Mount Sinai Hospital*, 3 Conn. App. 598, 600, 490 A.2d 1024 (estate is not a legal entity and can neither sue nor be sued), cert. denied, 196 Conn. 807, 494 A.2d 904 (1985).

Argued May 21—officially released August 3, 2010

*Karl Fleischmann,* for the appellants (named plaintiff et al.).

*Robert J. Piscitelli,* for the appellee (defendant).

PETERS, J. The principal issue in this action for breach of contract is whether a commercial tenant waived its right to enforce a provision in its lease warranting that "a permanent certificate of occupancy or equivalent certificate has been or prior to Tenant's occupancy will be issued covering the Building and permitting the use of the Premises for such purpose." It is undisputed that, because of preexisting zoning violations on the premises, the landlord could not obtain such a certificate at the time the lease was signed. It is equally undisputed that, because of changes in its professional needs, the tenant never conducted business at the leased premises. The trial court concluded that the tenant nonetheless established, in other ways, that it had been an occupant of the leasehold and therefore was entitled to terminate the lease because of the landlord's breach of warranty. The landlord's successor in interest has appealed. We affirm the judgment of the court.

The plaintiff, Lewis R. Labbadia, executor of the estate of Stephen E. Owens, brought an action for unpaid rents allegedly due pursuant to a commercial lease between the decedent and the defendant, CTRE, LLC, doing business as Prudential CT Realty, for premises at 21 East Main Street in Mystic. The defendant filed both a denial and a counterclaim for breach of warranty to recover the amount of its rental payments and other related expenses. After a court trial, the court rendered judgment in favor of the defendant on the complaint and on its counterclaim in the amount of $171,833.33.[1] The plaintiff has appealed.

The underlying facts are undisputed. On November 29, 2004, Owens entered into a five year commercial

---

[1] The plaintiff's appeal has not challenged the court's calculation of the damages to which the defendant was entitled.

lease with the defendant for part of the premises at 21 East Main Street in Mystic, a section of the town of Stonington. The stipulated annual rent was $43,200, payable in monthly installments of $3600.

The lease contained three provisions that are relevant to the present controversy. Paragraph 5.1 stated that the defendant would use the premises as a real estate brokerage and for related uses incidental or accessory thereto. That paragraph also provided that "a permanent certificate of occupancy or equivalent certificate has been or prior to Tenant's occupancy will be issued covering the Building and permitting the use of the Premises for such purpose." Further, paragraph 18 warranted that the building "is zoned to permit the full and complete operation of a real estate business office" and stated that the lease "shall be voidable at the Tenant's option if the Landlord cannot warrant the above."

Within a year of the signing of the lease, the defendant decided that it no longer needed the rented space. Because of the absence of a certificate of zoning compliance, the defendant was unsuccessful in its effort to sublease the property. Consequently, in two letters dated June 20 and August 16, 2007, the defendant notified Owens of its intention to rescind the lease because of his breach of warranty.[2] The defendant's own application to obtain such a certificate subsequently was denied by the Stonington zoning enforcement officer on August 24, 2007. Although site plan approval is a prerequisite to a zoning permit in Stonington, the plaintiff did not obtain site plan approval for use of the property as a real estate brokerage until August 19, 2008.

The trial court addressed four issues in its memorandum of decision. It held that (1) the defendant's failure to occupy the premises as a real estate office did not

[2] Owens died shortly thereafter and the present litigation is being pursued by the executor of his estate.

operate as a waiver of the defendant's right to enforce Owens' breach of warranty, (2) Owens' failure to obtain a certificate of occupancy or a certificate of zoning compliance was a breach of his obligations under the lease, (3) because of Owens' breach, the plaintiff was not entitled to recover unpaid rentals for the remainder of the rental term and (4) the defendant sustained its burden of proof in its claim for return of its rental payments in its amended counterclaim and proved its right to damages of $171,833.33.

In reaching these conclusions, the court relied on the unchallenged and uncontradicted testimony of two Stonington zoning enforcement officers, Wayne Greene and Joseph M. Larkin. They described at length the zoning implications of the contemplated use of the first floor of the main building at 21 East Main Street as a real estate brokerage. The court found credible their testimony that a history of zoning violations on the property and the absence of a zoning permit for its currently contemplated use would have precluded the issuance of the certificate of zoning compliance that was required by the lease.[3]

The plaintiff's appeal raises four issues. He maintains that the trial court improperly (1) determined that the defendant had not waived Owens' obligation to obtain a certificate of occupancy, (2) relied on evidence of irrelevant zoning violations, (3) failed to assign dispositive weight to a letter from the Stonington town planner and (4) failed to find that the plaintiff had proven his claim for damages.[4] We are not persuaded.

## I

## OCCUPATION OF THE PREMISES

The plaintiff's principal claim on appeal, as it was at trial, is that Owens never became obligated to obtain

---

[3] The plaintiff did not challenge the admissibility of this evidence at trial.

[4] In light of our resolution of the first three claims in favor of the defendant, we do not reach the plaintiff's fourth claim of error.

a certificate of occupancy for use of the leasehold premises as a real estate office because the defendant never occupied the premises. He emphasizes that the defendant never installed telephones or desks on the premises and did not conduct its real estate business there. We agree with the plaintiff that, in the absence of a dispute about the underlying facts, he is entitled to plenary review of this claim of law. *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 109, 900 A.2d 1242 (2006). We are not, however, persuaded of the merits of his claim.

In its determination that the defendant had become an occupant of the property, the court relied on the Black's Law Dictionary definitions of "occupancy" as the "period or term during which one owns, rents or otherwise occupies property," and of "occupant" as "[o]ne who has possessory rights in, or control over, certain property or premises." See Black's Law Dictionary (8th Ed. 2004). It held that the defendant met the definition of occupant because, "[f]ollowing the signing of the lease agreement the defendant took possession of and began to occupy the premises. The defendant was given the keys[5] and began to make improvements, which improvements were authorized by the lease agreement. [The defendant's] chief financial officer . . . testified that the defendant hired planners and construction crews to take control of the space and [to] fit it for operation. The defendant purchased furniture and signs for the office and began demolition work. Most importantly, the defendant paid and the plaintiff accepted rent for the premises." The period of rental payments, the court earlier had observed, was two and one-half years.

The plaintiff takes issue with the court's holding on two grounds. He maintains that the court improperly

---

[5] The plaintiff has not cited any evidence of record that anyone *other* than the defendant had keys to the premises during the defendant's leasehold.

(1) relied on and applied the Black's Law Dictionary definition of occupancy to the facts of record and (2) failed to assign dispositive weight to two letters in which the defendant's counsel had informed Owens that, "because of other business opportunities . . . [the defendant] never occupied the premises" and wanted "to rescind the lease."

Criticizing the trial court's reliance on Black's Law Dictionary, the plaintiff complains that the dictionary takes "too loose" a view of the meaning of occupancy. He has not, however, cited any more authoritative source on which we should rely. Our courts regularly have relied on a law dictionary to ascertain the meaning of otherwise undefined terms.[6] Like the trial court, we do not finding illuminating the examples of "occupancy" that the plaintiff proffers as paradigmatic. The plaintiff's references to the meaning of "occupancy" in military contexts, in the regulation of restaurant crowds or the management of public lavatories have no bearing on the issues in this case.

Specifically, we agree with the trial court that the defendant's failure to use the leased premises for the anticipated professional purpose does not outweigh the significance of its exercise of control over the premises through its possession of the keys thereto, its expenditure of funds to ready the property for use as a place of business and its payment of the stipulated rent even after its business needs changed. Further, when the defendant's professional needs changed, it conducted

---

[6] In this calendar year alone, our Supreme Court consulted Black's Law Dictionary to ascertain the definition of "public corporation"; *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 432, 994 A.2d 1265 (2010); of "immediate"; *Harris* v. *Bradley Memorial Hospital & Health Center*, 296 Conn. 315, 339, 994 A.2d 153 (2010); of "houseguest"; *Allstate Ins. Co.* v. *Palumbo*, 296 Conn. 253, 257, 994 A.2d 174 (2010); and of "financial responsibility"; *Rodriguez* v. *Testa*, 296 Conn. 1, 12, 993 A.2d 955 (2010).

its affairs in a manner consistent with that of an occupant by investing its own resources to search for a subtenant for the leased property.

The two 2007 letters from the defendant's counsel to Owens do not require a different conclusion. Although these letters refer to a change in the defendant's business plans, each also contains a demand for rescission of the defendant's lease because of Owens' breach of warranty and a concurrent demand for repayment of past rent. Read in their entirety, these letters are not inconsistent with the defendant's present claims.

More important, however, although the trial court early in its memorandum of decision acknowledged the plaintiff's claim that these letters manifested an "anticipatory repudiation of the lease [that] constitutes a breach of the lease," the court's opinion did not thereafter address this claim on its merits. The plaintiff has not rectified this gap in the record, either by filing a motion for articulation; see Practice Book § 66-5; or by filing a motion for reargument. See Practice Book § 66-2. "Because the plaintiff has failed to establish through an adequate record that the court incorrectly applied the law or could not reasonably have concluded as it did, we decline to review this claim." *de Repentigny* v. *de Repentigny*, 121 Conn. App. 451, 459, 995 A.2d 117 (2010).

II

EVIDENCE OF ZONING VIOLATIONS

The plaintiff's second contention on appeal is that the trial court improperly concluded that Owens' failure to obtain a certificate of occupancy or a certificate of zoning compliance for the leased property was a breach of his contractual obligations to the defendant. The plaintiff contends that the court improperly relied on

evidence presented by two Stonington zoning enforcement officers because that testimony described zoning violations that had occurred prior to the present leasehold and that related to premises other than the leased premises. We are not persuaded.

At the outset, we note that Greene, the former Stonington zoning enforcement officer, and Larkin, his successor as Stonington enforcement officer, testified at length, and without objection, about Owens' history of zoning violations in failing to obtain zoning permits when he changed the uses of the two buildings located at 21 East Main Street[7] and about the relevance of that history to the issuance of a certificate of occupancy for the defendant's leasehold. Having failed to challenge the admissibility of this evidence on the record, it ill behooves the plaintiff on appeal to criticize the trial court's reliance thereon.

A

To counter the difficulty created by this record, the plaintiff quotes a statement from *A & M Towing & Recovery, Inc.* v. *Guay*, 282 Conn. 434, 452, 923 A.2d 628 (2007), in which our Supreme Court discounted the significance of a town's decision not to issue a certificate of occupancy to "another building the plaintiff owned that shared the same parcel of land as the building rented to the defendants." Although this statement, on its face, supports the plaintiff's argument that, as a matter of law, the trial court should not have considered evidence of zoning violations unrelated to the property leased to the defendant, it must be read in context. In *A & M Towing & Recovery, Inc.*, the Supreme Court was asked to decide whether the public policy of protection of public health and safety authorized a judicial

---

[7] Section 8.2.2 of the Stonington zoning regulations requires that a zoning permit be obtained "[b]efore undertaking any site improvement work changing the use . . . of any structure . . . or changing the use of any premises."

extension to *commercial* property of a statutory requirement for a certificate of occupancy for *residential* housing. Id., 444. The court declined to so hold. Id., 451. In coming to this conclusion, the court noted the absence of alleged safety concerns in the case before it. Id., 452. In that connection, the court observed that the denial of a certificate of occupancy on other property owned by the defendant was not probative because that denial, likewise, had not been based on safety concerns. Id. Nothing in the Supreme Court's decision suggests that it was addressing the authority of local zoning officers to enforce local zoning regulations.

B

Relying on the uncontested testimony presented by the Stonington zoning officers in this case, the trial court held that Owens would not have been able to obtain a certificate of occupancy for the leasehold in 2004, when he executed the lease agreement, and that this inability established his material breach of the terms of his lease. The plaintiff protests that, in coming to this conclusion, the court improperly relied on a history of past zoning violations and on zoning violations at a carriage house that was not part of the defendant's leasehold. We disagree.

The plaintiff has not challenged the accuracy of the zoning officers' extensive testimony at trial that, under Stonington zoning regulations, past zoning violations and present zoning violations with respect to a building *not* subject to the leasehold were relevant to the issuance of a certificate of occupancy for the leasehold. See Stonington Zoning Regs., § 8.2.3.[8] More important,

---

[8] Section 8.2.3 of the Stonington zoning regulations, entitled Certificate of Zoning Compliance, provides in relevant part: "It shall be unlawful to use any building, structure, premises or part thereof, hereafter created or erected, or change the use of a structure until a Certificate of Zoning Compliance shall have been issued showing that such building, structure or premises, or part thereof, and the proposed use thereof, are in conformity with the provisions of these Regulations. . . ."

he has not challenged their testimony that, under the zoning regulations, the defendant's occupation of the leased premises as a real estate office was a change in its use that required a new zoning permit and a certificate of occupancy regardless of zoning violations elsewhere on the Owens property. See id., § 8.2.2.[9] On this record, the plaintiff cannot prevail on his claim that the court improperly concluded that Owens' failure to obtain the required certification in 2004 was a breach of his warranty to the defendant.

We are equally unpersuaded by the plaintiff's argument, in his reply brief, that "the lease was not conditioned upon the landlord obtaining a certificate of occupancy; rather, the landlord's obligation to obtain the certificate was conditioned on the tenant taking occupancy." This claim is premised on the plaintiff's earlier argument that the defendant never became an occupant of the leased premises. We remain unpersuaded of the merits of this contention.

C

Alternatively, the plaintiff maintains that the trial court improperly failed to find that Owens satisfied his obligation to obtain a certificate of occupancy by obtaining a letter from Keith A. Byrnes, the Stonington town planner, dated July 10, 2007, that stated "continuation of the present office and residential uses is permitted at [21 East Main Street]. These uses are permitted in the DB-5 Zone, have been operating at the site for decades and are conforming regarding parking." Furthermore, the plaintiff decries the trial court's failure to assign dispositive weight to the planning and zoning commission's subsequent decision, more than a year later, on August 19, 2008, to grant the plaintiff's application for site plan approval. We are not persuaded.

---

[9] See footnote 7 of this opinion.

The trial court addressed the relationship between a letter describing permitted uses of the leased premises and the certificate of occupancy required by the lease only indirectly, when it recited with approval the relevant testimony offered by zoning enforcement officer Larkin. In response to a question about the requirements for expanding an office use for a real estate brokerage, Larkin stated: "It's a permitted use but it needs site plan approval from the planning and zoning commission before I can issue a zoning permit for that change." The court then noted, without further comment, the considerable passage of time between the negotiation of the lease requiring the imminent procurement of a certificate of occupancy and the actual site plan approval in 2008.

This record does not support the plaintiff's claim of an automatic equivalence between a letter indicating the *likelihood* of site plan approval and a certificate of occupancy. See *Holt* v. *Zoning Board of Appeals*, 114 Conn. App. 13, 26–27, 968 A.2d 946 (2009) (advisory letter not final determination of zoning issue). Indeed, the plaintiff has offered no justification for Owens' delay or his own delay in pursuing the prescribed requisites for obtaining a certificate of occupancy. If further elaboration might have clarified the plaintiff's claim or the court's response thereto, we again note that he could have filed a motion for articulation. See Practice Book § 66-5.[10]

In conclusion, we are persuaded that the court properly construed the lease between the parties to require Owens to obtain a certificate of occupancy at the time of the execution of the lease or shortly thereafter. We likewise conclude that the court properly held that

[10] In light of these conclusions, we need not address the plaintiff's claim that he established his claim, as Owens' successor in interest, to recover unpaid rents for the remainder of the leasehold term from the defendant.

Owens' contractual obligation was not waived by the defendant's subsequent decision not to operate the contemplated real estate agency at the site because the defendant engaged in other conduct that substantiated its occupancy of the premises. Finally, we hold that the court properly relied on the testimony of two Stonington zoning enforcement officials to establish that, in breach of Owens' warranty to the defendant, he did not obtain and could not immediately have obtained a certificate of occupancy for the premises that he leased to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.